**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

REBECCA NORRIS, Plaintiff,

v.

CITY AND COUNTY OF DENVER,
a Municipal Corporation, Defendant.

---

**COMPLAINT**

---

**COMES NOW** the Plaintiff, by and through her attorneys, Padilla & Padilla, PLLC, and the Roseman Law Offices, LLC, and for a Complaint against Defendant, states and alleges as follows:

### I.   NATURE OF THE CLAIM

**1.** This is an action for declaratory relief, injunctive relief and damages to redress Plaintiff for the unlawful deprivation of her rights to equal employment opportunity as secured to her by 42 U.S.C. §§ 1981 and 1983 (the Civil Rights Acts of 1866 and 1871) and 2000e *et seq.* (Title VII of the Civil Rights Act of 1964) ("Title VII"), 29 U.S.C. §§ 621 *et seq.* (the Age Discrimination in Employment Act of 1967) ("ADEA"), and C.R.S. §§ 24-34-401, *et seq.* (the Colorado Anti-Discrimination Act) ("CADA").

### II.   JURISDICTION AND VENUE

**2.** This Court has jurisdiction, pursuant to 42 U.S.C. §§ 1988(a) and 2000e-5(f) and (3), and pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), over Plaintiff's claims of sex discrimination, national origin discrimination and retaliation in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of Title VII.

**3.** This Court has jurisdiction, pursuant to 29 U.S.C. § 626(c)(1), and pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), over Plaintiff's claims of age discrimination and of retaliation in violation of the ADEA.

**4.** This Court has jurisdiction, pursuant to C.R.S. § 24-34-306(15), over Plaintiff's claims of sex discrimination, national origin discrimination, age discrimination and retaliation in violation of CADA.

**5.** Venue herein is proper under 42 U.S.C. § 2000e-5(f)(3), under 28 U.S.C. §1391(b) and under C.R.C.P. 98(c)(1). Plaintiff's claims arose within the District of Colorado. The unlawful employment practices alleged herein were committed in the District of Colorado. The events or omissions giving rise to Plaintiff's claims occurred in the District of Colorado. Defendant resides in the District of Colorado.

### III.   PARTIES

**6.** Plaintiff, whose maiden name is Rebecca Cardenas, is a female citizen of the United States of Mexican-American descent who received the Employee of the Year Award – Courtroom Clerk from Defendant for 2009 and 2015. At all times relevant to this case, Plaintiff was more than forty (40) years of age.

**7.** At all times relevant herein, Plaintiff was employed by Defendant as a Judicial Assistant III in the Denver County Court.

**8.** Defendant is a municipal corporation created under the laws of the State of Colorado and Article 20 of the Constitution of the State of Colorado, which employed more than twenty (20) persons for each working day in each of twenty or more calendar weeks in the relevant current year or preceding calendar year, and is therefore an "employer" within the meaning of 29 U.S.C. § 630 (b). In addition, at all times pertinent hereto, Defendant was a political subdivision of the State of Colorado.

9. Defendant is an "employer" within the meaning of within the meaning of 42 U.S.C. § 2000e-(b) and C.R.S. § 24-34-401(3). At all times pertinent hereto, Defendant engaged in an industry affecting commerce and employed more than fifteen (15) employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

### IV.   JURISDICTIONAL REQUIREMENTS

10. On or about May 16, 2019, Plaintiff filed a charge of sex, national origin and age discrimination, and of retaliation, with the Equal Employment Opportunity Commission ("EEOC") that satisfied the requirements of 42 U.S.C. § 2000e-5(b). That charge was filed within three hundred (300) days after one or more of the unlawful employment practices alleged herein had occurred.

11. On or about May 24, 2019, Plaintiff filed a charge of sex, national origin and age discrimination, and of retaliation, with the Colorado Civil Rights Division ("CCRD") that satisfied the requirements of C.R.S. §§ 24-34-306(1) and 24-34-403. That charge was filed within six (6) months after one or more of the unlawful employment practices alleged herein had occurred.

12. On or about February 4, 2020, the U.S. Department of Justice issued a notice to Plaintiff, informing her that she could file a complaint against Defendant, alleging a violation or violations of Title VII and of the ADEA, within ninety (90) days of the date on which she received that notice. Plaintiff filed the Complaint in this case within ninety (90) days of the date on which she received that notice.

13. On or about February 28, 2020, the CCRD issued a notice to Plaintiff, informing her that she could file a complaint against Defendant, alleging a violation or violations of CADA, within ninety (90) days of the date on which she received that notice. Plaintiff filed the Complaint in this case within ninety (90) days of the date on which she received that notice.

Case 1:20-cv-01226-NYW   Document 1   Filed 05/01/20   USDC Colorado   Page 4 of 16

-4-

## V.  FACTUAL ALLEGATIONS

14. On or about June 4, 2007, Plaintiff commenced her employment with Defendant as a Judicial Assistant III with the Denver County Court.

15. In the summer of 2016, while Plaintiff was performing her administrative duties in her assigned courtroom, as a court clerk in the Denver County Court, she was sexually assaulted and sexually harassed by Andrew Armatas, a former full-time County Court Judge, who at the time was employed by Defendant as a senior judge.

16. Judge Armatas's sexual assault and harassment of Plaintiff consisted of his verbal and physical actions, after walking into the empty courtroom and sitting down unusually and uncomfortably close to where Plaintiff was seated. After discussing when Judge Robert Crew, the judge whom Plaintiff assisted, would be back, Judge Armatas told Plaintiff, "You look like you like to get dirty. You look like you could get wild." Judge Armatas then immediately made unwelcome physical advances towards Plaintiff, kissing her and touching her breasts, prompting Plaintiff to scream at him to get away from her and demanding that he leave, whereupon Judge Armatas quickly left the courtroom.

17. Plaintiff reported Judge Armatas's said sexual harassment and assault to her immediate supervisor, Anne Stein, on the same day on which it occurred.

18. Defendant, for approximately two years after that report, failed to take any action concerning or to otherwise investigate Plaintiff's complaint that she had been sexually assaulted by Judge Armatas

19. It was not until July 30, 2018, that Defendant retained the services of Employment Matters, an outside consulting firm, to investigate Plaintiff's allegations of being sexually assaulted by Judge Armatas and her reporting of the sexual assault. Thereafter, that investigator interviewed Plaintiff and a number of other witnesses.

**20.** An investigator from Employment Matters interviewed Plaintiff, Ms. Stein and several other female employees within the Denver County Court system, who corroborated Plaintiff's claim that Judge Armatas had engaged in sexual misconduct against these female employees, during the times relevant to this Complaint, sexually harassing them or otherwise engaged in sexually inappropriate actions against them. That corroboration includes, but is not limited to, the following:

**(a)** Nicole Coburn, formerly known as Nicole Martinez, who was employed by Defendant as a courtroom clerk, stated that Judge Armatas asked her out for drinks several times; that she tried to avoid him if she saw him because he made her uncomfortable; that he asked for her phone number and that she gave it to him, thinking it was just to talk about work, but "then it got weird"; that he texted her on different occasions; that he asked her to meet him for drinks on weekends and after work; and that she thought his behavior was creepy because he kept coming to her work area asking her to go out with him and because "he's so old." Judge Armatas was in his seventies and Ms. Martinez/Colburn is in her thirties.

**(b)** Stacie Beckwith, the Finance Manager for the Denver County Court, informed the Clerk and chief administrative officer of the Denver Count Court, Terrie Langham, that Judge Armatas had asked her out for coffee; that when she met him, Judge Armatas asked her whether she had informed her husband about their meeting; that when she told Judge Armatas that she told her husband everything, Judge Armatas responded that he didn't tell his wife, touching her hand as she was holding her coffee cup in a way that she felt to be flirtatious and highly inappropriate; that after that encounter, Judge Armatas continued to ask her out several times for drinks or coffee; and that Judge Armatas sought her out at work, even though she worked at the Clerk's office in the City and County Building and Judge Armatas worked at the Lindsey-Flanigan

or Simonent-VanCise court buildings. Ms. Beckwith further said that, when Judge Armatas swung by her office, she picked up the telephone and acted as if she were talking to someone or sought other ways to avoid him; and that Judge Armatas hugged her whenever they met and that she took steps to try to avoid having any further interactions with him. These events took place prior to Plaintiff's sexual assault by Judge Armatas.

**(c)** Terrie Langham confirmed that she was aware that Judge Armatas had asked Ms. Martinez/Colburn for her phone number and that Ms. Beckwith had reported to directly to Ms. Langham about Judge Armatas's asking her out for drinks and what occurred when she met him for coffee.

**(d)** Connie Strehler, another Denver County Court clerk, stated that she worked in the adjoining courtroom that shared space for the courtroom clerks where Judge Armatas worked and that therefore, she had frequent contact with Judge Armatas. Also, she said that after Judge Armatas retired, he filled in for her judge; that Judge Armatas always liked to hug female employees of Denver County Court; that she did not appreciate Judge Armatas hugging her; that Judge Armatas, in 2017, bent over and hugged another female employee "real hard" and kissed that employee on the head in the presence of Ms. Strehler, which made her feel uncomfortable; that Judge Armatas was known as Judge "Touchy Feely"; that Judge Armatas liked to hug a lot and that he hugged "the ladies," not just her; and that, on one occasion, Judge Armatas caressed her hand, rubbing his hand on top of her hand, in a way that she did not appreciate.

**(e)** Ms. Anne Stein, a supervisor at Denver Count Court, stated that Judge Armatas was known for hugging female employees, including herself, at work.

**(f)** Denver County Court Clerk Sondra Byrd confirmed that, in approximately August 2016, Plaintiff advised her about Judge Armatas's coming to her courtroom when Plaintiff

was alone and sexually assaulting her, and other incidents when Plaintiff had contact with Judge Armatas's making overt sexual gestures to her and/or touching her in an inappropriate sexual manner.

**(g)** Judge Barry Schwartz confirmed that Plaintiff advised him that she had been sexually assaulted by Judge Armatas before there was any issue of Plaintiff being investigated for any alleged misconduct.

**(h)** Various family members and friends of Plaintiff confirmed that Plaintiff in 2016 contemporaneously reported being sexually assaulted by Judge Armatas.

**21.** In May 2018, Plaintiff verbally reported the details of Judge Armatas' sexually harassing conduct to her then immediate supervisor, Deanna Cederstrom; to Jack Davies, a Human Resources Manager for Defendant; and to the Denver Police Department. Plaintiff provided names to the Denver Police of persons she thought might possess information relevant to Judge Armatas's proclivity of making sexual advances to female employees of the Denver County Court.

**22.** The Denver Police Department investigation revealed that Plaintiff's co-worker, Ms. Martinez/Coburn, stated that shortly after she began to work for the Denver County Court in February 2017, Judge Armatas invited her for drinks after work or on a weekend. Ms. Martinez/Colburn reluctantly gave Judge Armatas her telephone number upon his insistence, thinking it was about work. She found Judge Armatas to be "creepy" in light of the difference in their ages and his continually coming to her work area and asking her to go out with him.

**23.** On or about July 13, 2018, Plaintiff filed charges of employment discrimination and retaliation with the EEOC and with the CCRD. Plaintiff alleged in those charges that Defendant, through its supervisors and managers, had discriminated against her regarding the terms and conditions of her employment with Defendant because of her sex, national origin and

age, and further that Defendant, through its supervisors and managers, had retaliated against her by disciplining her in the form of a fifteen-day unpaid suspension ostensibly for an unrelated matter, but in reality because she had reported Judge Armatas's unlawful sexual assault and sexual harassment of her and the judge's frequent sexual harassment of other female employees of the Denver County Court.

24. On January 28, 2019, Defendant, through its Court Administrator, Ms. Langham, terminated Plaintiff's employment under the guise that her allegations against Judge Armatas were false and dishonest.

25. In making that decision to fire Plaintiff, Defendant ignored the evidence its agents had gathered about Judge Armatas's behavior with other female employees of Defendant, including but not limited to his touching other women inappropriately at work at the Denver County Court and his attempts to get other female employees to meet him outside work for drinks or coffee, to touch them and to otherwise sexually assault and sexually harass them.

26. Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.as the direct and proximate result of the unlawful discriminatory and retaliatory actions and conduct perpetrated upon her by Defendant through its supervisors and managers.

27. Defendant treated Plaintiff differently because of her gender, national origin and age, than the way it treated male, non-Hispanic and younger employees.

28. Defendant retaliated against Plaintiff because of her charges to the EEOC and to the CCRD, and because of her complaints to Defendant's management employees, the Denver Police Department, and representatives of an outside firm that Judge Armatas had sexually assaulted and sexually harassed her.

29. Defendant, through its and managers, has not, during the times relevant to this Complaint, subjected its employees who are male, non-Hispanic and/or under forty years of age to similar disciplinary measures that Plaintiff suffered for comparable conduct or whenever said employees have complained to either internal and/or outside fair employment practices agencies about employment practices against them which they perceived to be discriminatory, retaliatory or otherwise in of violation of federal employment anti-discrimination laws.

30. The decision of Defendant to terminate Plaintiff's employment and the reasons Defendant has provided to purportedly support its decision are false and patently pretextual, as these so-called reasons to terminate Plaintiff's employment totally disregarded and ignored the considerable weight of evidence from third-party female employees, some of whom are Mexican American, corroborating Plaintiff's allegations of Judge Armatas's unlawful sexually harassing conduct perpetrated upon her and other female employees of the Denver County Court.

31. All of the unlawful actions of which Plaintiff complains herein were taken and engaged in by Defendant, through its supervisors and managers, against Plaintiff under the color of law.

32. Defendant is responsible for the unlawful actions and conduct of all its supervisors and managers who participated in the decisions to discipline Plaintiff and terminate her employment with Defendant under the doctrine of *respondeat superior*.

## VI.    FIRST CLAIM FOR RELIEF

For her First Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 32, inclusive, of this Complaint and further states and alleges as follows:

33. Defendant violated 42 U.S.C. § 2000e-3 by retaliating against Plaintiff because she complained about what she reasonably and in good faith believed to be sex and national origin

discrimination in violation of Title VII. In addition or in the alternative, Defendant violated 42 U.S.C. § 2000e-3 by retaliating against Plaintiff in whole or in part because she filed a charge with the EEOC in which she alleged that Defendant had discriminated against her because of her sex or national origin.

34. As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

35. In addition, as a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.

## VII.   SECOND CLAIM FOR RELIEF

For her Second Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 35, inclusive, of this Complaint and further states and alleges as follows:

36. Defendant violated 29 U.S.C. § 623(d) by retaliating against Plaintiff because she complained about what she reasonably and in good faith believed to be age discrimination in violation of the ADEA. In addition or in the alternative, Defendant violated 29 U.S.C. § 623(d) by retaliating against Plaintiff in whole or in part because she filed a charge with the EEOC in which she alleged that Defendant had discriminated against her because of her age.

37. As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

38. Defendant willfully retaliated against Plaintiff because she complained about what she reasonably and in good faith believed to be age discrimination in violation of the ADEA, and/or

because she filed a charge with the EEOC in which she alleged that Defendant had discriminated against her because of her age. As a result, Defendant is liable to Plaintiff for liquidated damages.

## VIII. THIRD CLAIM FOR RELIEF

For her Third Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 38, inclusive, of this Complaint and further states and alleges as follows:

**39.** Defendant violated C.R.S. § 24-34-402(1)(e)(IV) by retaliating against Plaintiff because she complained about what she reasonably and in good faith believed to be sex, national origin and/or age discrimination in violation of CADA. In addition or in the alternative, Defendant violated C.R.S. § 24-34-402(1)(e)(IV) by retaliating against Plaintiff in whole or in part because she filed a charge with the CCRD in which she alleged that Defendant had discriminated against her because of her sex, national origin and/or age.

**40.** As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**41.** In addition, as a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.

## IX. FOURTH CLAIM FOR RELIEF

For her Fourth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 41, inclusive, of this Complaint and further states and alleges as follows:

**42.** Defendant violated 42 U.S.C. § 2000e-2(a) by discriminating against Plaintiff because of her gender. As a direct and proximate result of such actions, Plaintiff has been, is, and

in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

43. In addition, as a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.

## X. FIFTH CLAIM FOR RELIEF

For her Fifth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 43, inclusive, of this Complaint and further states and alleges as follows:

44. Defendant violated 42 U.S.C. § 2000e-2(a) by discriminating against Plaintiff because of her national origin. As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

45. In addition, as a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.

## XI. SIXTH CLAIM FOR RELIEF

For her Sixth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 45, inclusive, of this Complaint and further states and alleges as follows:

46. Defendant violated 29 U.S.C. § 623(a) by discriminating against Plaintiff because of her age. As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**47.** Defendant willfully discriminated against Plaintiff because of her age. As a result, Defendant is liable to Plaintiff for liquidated damages.

## XII.   SEVENTH CLAIM FOR RELIEF

For her Seventh Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 47, inclusive, of this Complaint and further states and alleges as follows:

**48.** Defendant violated C.R.S. § 24-34-402(1)(a) by discriminating against Plaintiff because of her sex, national origin and/or age. As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**49.** In addition, as a direct and proximate result of Defendant's sex and/or national origin discrimination, Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.

**50.** Defendant willfully discriminated against Plaintiff because of her age. As a result, Defendant is liable to Plaintiff for liquidated damages.

## XIII.   EIGHTH CLAIM FOR RELIEF

For her Eighth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 50, inclusive, of this Complaint and further states and alleges as follows:

**51.** As a result of the acts committed by Defendant, through its supervisors and managers, Plaintiff has been denied and will continue to be denied the same right to enter into and enforce contracts as is enjoyed by white citizen, as protected by the Thirteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1981.

**52.** As a direct and proximate result of such actions, Plaintiff has been, is, and in the

future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**53.**  In addition, as a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.

### XIV.  NINTH CLAIM FOR RELIEF

For her Ninth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 53, inclusive, of this Complaint and further states and alleges as follows:

**54.**  As a result of the acts committed by Defendant, through its supervisors and managers, taken against Plaintiff under color of law, Plaintiff has been denied her rights to equal employment opportunity under 42 U.S.C. § 1983.

**55.**  As a result of the acts committed by Defendant, through its supervisors and managers, Plaintiff has been denied and will continue to be denied her rights to equal employment opportunity under the Fourteenth Amendment to the Constitution of the United States.

**56.**  As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages, retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**57.**  In addition, as a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer severe emotional distress, mental suffering, humiliation and embarrassment.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

**A.**  Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendant set forth in this Complaint violated and continue to violate Plaintiff's rights under the

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*; under 42 U.S.C. § 1981; and under the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, *et seq.*; and/or under the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-401, *et seq.*

**B.** Order Defendant to make Plaintiff whole by reinstating her to her former position with Defendant, providing appropriate back pay and reimbursement for lost pension and other benefits and expenses in an amount to be shown at trial; or in the alternative, order Defendant to make Plaintiff whole providing appropriate back pay and reimbursement for lost pension and other benefits and expenses, in an amount to be shown at trial and paying Plaintiff the present value of her future lost earnings and future lost pension and other benefits and expenses, in an amount to be shown at trial;

**C.** Enter judgment in favor of Plaintiff and against Defendant for compensatory damages, in an amount to be shown at trial;

**D.** Enter judgment in favor of Plaintiff and against Defendant for liquidated damages, in an amount to be shown at trial;

**E.** Grant to Plaintiff any attorney's fees she may incur, plus his costs, expert witness fees, disbursements, and pre - and post-judgment interest; and

**F.** Grant such other and additional relief as may to this Court seem proper.

-16-

Respectfully submitted,

PADILLA & PADILLA, PLLC

s/ Kenneth A. Padilla
KENNETH A. PADILLA
1753 Lafayette Street
Denver, CO 80218
Phone: 303-832-7145
Fax: 303-832-7147
E-mail: Padillaesq@aol.com

ROSEMAN LAW OFFICES, LLC

s/ Barry D. Roseman
BARRY D. ROSEMAN
1120 Lincoln Street, Suite 1306
Denver, CO 80203
Phone: (720) 917-1300
Fax: (303) 861-9214
E-mail: Barry@RosemanLegal.com

Attorneys for Plaintiff

Address of Plaintiff:

3555 Broadlands Lane, Unit 102
Broomfield, Colorado 80023

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE HEREIN**