IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-01226-DDD-SKC

REBECCA NORRIS,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

---

**DISCOVERY ORDER RE: RFP NO. 16 [DKT. 74] &
ORDER PARTIALLY DENYING PLAINTIFF'S AMENDED MOTION
FOR LEAVE TO DEPOSE WITNESS OUT OF TIME [DKT. 78]**

---

This Order addresses two related disputes: (1) a discovery dispute regarding Defendant's response to request for Production No. 16 [Dkt. 74]; and (2) referral to this Court of Plaintiff's Amended Motion [Dkt. 78] seeking leave to depose a witness out of time.

**A.  Discovery Order Re: RFP No. 16**

Pursuant to this Court's practice standards for resolving discovery disputes, the parties filed a Joint Discovery Dispute Report on June 10, 2022 [Dkt. 74]. At a hearing on June 16, 2022, the Court resolved the parties' dispute concerning Defendant's responses to Plaintiff's RFAs and Interrogatory No. 9. The Court took under advisement the issue regarding application of the attorney-client privilege or

1

common interest doctrine to information sought by Plaintiff's RFP No. 16. The Court now addresses this issue.

RFP No. 16 seeks production of communications between the Denver City Attorney's Office (CAO) and former Senior Judge Andrew Armatas or his personal attorney, David Miller, from June 1, 2016, to the present. Relevant here, Defendant City and County of Denver ceased providing Judge Armatas judicial assignments as of May 7, 2018—the same date Plaintiff made reports to the Denver Police Department (DPD) and the City's human resources (HR) personnel that she was sexually assaulted by Judge Armatas. The City terminated Plaintiff's employment on January 28, 2019, claiming she made false allegations against Judge Armatas to avoid discipline. Plaintiff filed this lawsuit only against the City on May 1, 2020. She brings claims of discrimination and unlawful retaliation under federal and state laws.

In response to RFP No. 16, the City produced communications involving the CAO, Judge Armatas, and Mr. Miller (his personal attorney), for the period June 1, 2016 (as requested) to January 28, 2019, reasoning:

> When it became clear, however, that there was no credible evidence to support Plaintiff's accounts, and overwhelming evidence to support Judge Armatas' account that he was either out-of-state or on the bench at an entirely different location at the time of the alleged events, Defendant made its decision and issued its January 29 (sic), 2019 termination letter. Defendant maintains from that point forward, and through the entirety of this litigation, City Attorney communications with Judge Armatas are protected by the Attorney Client Privilege and the presence of David Miller, his personal attorney, during those confidential communications does not waive that privilege due to the Common Legal Interest Doctrine.

[Dkt. 74, pp.10-11.] The City also objected to RFP No. 16 raising the attorney-client privilege and the common legal interest doctrine. It argued the CAO and Mr. Miller have jointly represented Judge Armatas since the outset of this litigation.

The question is whether the City's production of communications responsive to RFP No. 16 since January 28, 2019, is warranted. The Court construes this dispute as a motion to compel by Plaintiff. The Court first considers whether the attorney-client privilege applies to the CAO and its communications with Judge Armatas beginning and after January 28, 2019, when he was no longer employed by the City.[1]

## Legal Principles

Plaintiff has asserted both federal and state law claims. Under Colorado law, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (citing *Losavio v. Dist. Court*, 533 P.2d 32, 35 (Colo. 1975)). The privilege applies only to communications under circumstances giving rise to a reasonable expectation that

---

[1] It was unclear from defense counsel during the discovery hearing whether Judge Armatas remains employed by the City. But considering the City has not assigned him judicial duties in over three years—since May 2018—the Court assumes he is a *former* employee (for purposes of this analysis) subject to receiving assignments on a contractual basis. *See* Colo. Rev. Stat. § 24-51-1105(1)(b) (". . . upon written agreement with the chief justice of the Colorado supreme court, a member of the judicial division may perform, during retirement, assigned judicial duties without pay for ten, twenty, thirty, sixty, or ninety days each year . . .. Such agreement shall be for a period of not more than three years.")

3

the communications will be treated as confidential. *Tucker*, 232 P.3d at 198 (citing *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)). Mere statements of fact are not protected by the attorney-client privilege. *People v. Trujillo*, 144 P.3d 539, 545 (Colo. 2006) (citing *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000)). "The burden of establishing the applicability of the attorney-client privilege rests with the claimant of the privilege." *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. App. 2003).

Under federal law, the Supreme Court has rejected a "control group" approach when determining application of the privilege with an entity client. *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981). It instead explained the attorney-client privilege could extend to attorney communications with employees outside the "control group" provided (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of their superior; (3) the employee was commenting on matters within the scope of their employment; and (4) the communication was treated as confidential. *Id.* at 394; *see also In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 692–93 (D. Colo. 1993) (citing *Upjohn* and stating "the privilege can exist between counsel and middle or lower-level employees if those employees" have relevant information needed by counsel to advise the client); *W. Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 181494, at *7 n.9 (D. Kan. Jan. 31, 2002) (discussing *Upjohn* and stating "the Court instructed determinations of this kind should be made on a case-by-case basis by considering in

4

each instance whether the employee was communicating with counsel at the direction of superiors in order to secure legal advice.").

My colleague, Magistrate Judge N. Reid Neureiter, fairly recently examined the issue of whether the attorney-client privilege applies to an employer's communications with former employees. Judge Neureiter buttressed his analysis with a thoughtful *Colorado Lawyer* article which discusses a standard employed in *Peralta v. Cedant Corporation*, 190 F.R.D. 38, 41-42 (D. Conn. 1999). *See Corcoran v. HCA-HealthONE LLC*, No. 21-cv-02377-NRN, 2022 WL 1605296, at *1 (D. Colo. May 20, 2022) (discussing *Colorado Lawyer*, May 2022 at 42-48.). Given the dearth of authority in this Circuit and the state courts, this Court agrees with Judge Neureiter that *Peralta* provides useful guidance for determining whether the attorney-client privilege applies to communications with a former employee—*to wit*:

> [D]id the communication relate to the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment? If so, such communication is protected from disclosure by [the employer's] attorney-client privilege under *Upjohn*. As to any communication between [the employer's] counsel and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously, no attorney-client privilege applies.

*Peralta*, 190 F.R.D. at 41-42.

This approach is consistent with rulings in this judicial district and at the Colorado state level which have generally acknowledged the attorney-client privilege applies to communications between corporate counsel and former employees. *Collardey v. Alliance For Sustainable Energy, LLC*, 406 F. Supp.3d 977, 981 n.3 (D.

5

Colo. 2019) (noting the lack of Tenth Circuit authority but that other circuits have found the distinction of former employees is irrelevant for purposes of the attorney-client privilege); *Denver Post Corp. v. Univ. of Colo.*, 739 P.2d 874, 880 (Colo. App. 1987) (applying attorney-client privilege to "communications between counsel and former employees of the client which concern activities during the period of their employment").

But the above discussion is largely academic here because the CAO has disclaimed any attorney-client privilege it may have had with Judge Armatas concerning his actions during his employment and until it terminated Plaintiff's employment on January 28, 2019. The City produced communications between the CAO, Judge Armatas, and Mr. Miller, preceding January 28, 2019. The CAO does, however, claim attorney-client privilege or the common interest doctrine apply to its communications with Judge Armatas and Mr. Miller since January 28, 2019. In its objection to RFP No. 16, the City claims the CAO and Mr. Miller have jointly represented Judge Armatas "since the outset of this litigation . . .."

Colorado and federal common law both recognize the common-interest doctrine as an exception to the waiver of attorney-client privilege or work-product protection when protected information is shared with a third-party. *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 11-cv-01687-PAB-DLW, 2013 WL 3825899, at *2 (D. Colo. July 24, 2013). The Tenth Circuit narrowly construes the common interest doctrine to apply when "different persons or entities have an identical legal interest with

6

respect to the subject matter of a communication between an attorney and a client concerning legal advice.... The key consideration is that the nature of the interest be identical, not similar."[2] *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir.1998) (cleaned up).

The Court finds the nature of Judge Armatas' relationship to the City varied over three different time periods: (1) the period prior to January 28, 2019, discussed above; (2) the period from January 28, 2019, to April 30, 2020 (the day before Plaintiff filed this lawsuit); and (3) the period starting May 1, 2020 (the day Plaintiff filed this lawsuit). Only the latter two periods are at issue given the City's concession concerning the first time period.

**January 28, 2019 – April 30, 2020:** The Court finds Judge Armatas and the City had identical legal interests during this period. The threat of litigation from Plaintiff loomed against each of them based on Judge Armatas' alleged conduct toward Plaintiff during his employment with the City. They each stood to be potential co-defendants in a lawsuit by Plaintiff notwithstanding the nature of the legal claims against each party may have differed or that the statute of limitations may have run on claims Plaintiff could assert against Judge Armatas.[3] *See Hedquist v. Patterson*,

---

[2] Because the common interest doctrine acts as an exception to the waiver of attorney-client privilege, the Court applies federal common law concerning the common interest doctrine in light of Plaintiff's federal law claims. *See, e.g.,* Fed. R. Evid. 501.

[3] It is not uncommon in litigation for a plaintiff to file suit after expiration of an applicable statute of limitations with the court deciding whether the claims are time-barred.

7

215 F. Supp. 3d 1237, 1247 (D. Wyo. 2016) ("While Patterson and the City Council may have had alternative roles in Hedquist's removal proceeding, they shared an identical legal interest in (1) the investigation of Patterson's conduct and (2) obtaining legal advice related to the legality of the removal proceedings."). Their common interest aside, it further appears the CAO and Mr. Miller dually represented Judge Armatas during this period given the real threat of litigation that existed at the time. Communications during this period are protected by the attorney-client privilege and there has been no waiver either because of the CAO's and Mr. Miller's dual representation, or because of the City's and Judge Armatas' common legal interests.

**Since May 1, 2020:** The City's and Judge Armatas' interests ceased to be identical, however, when Plaintiff filed this lawsuit on May 1, 2020, without asserting claims against Judge Armatas. Judge Aramtas and the City are not co-defendants, and the threat of litigation against Judge Armatas for his alleged actions during his employment with the City appear time barred. *Cf. Hedquist*, 215 F. Supp. 3d at 1249 ("Here it is apparent that communications between Defendants and their attorneys are protected as a joint-defense agreement was entered by Patterson and the City, the Defendants face the same Plaintiffs, and the Defendants are defending the same claims under federal law.") And even assuming the CAO has "represented" Judge Armatas since May 1, 2020, that representation would necessarily only be for his actions during the time of his employment, which the City has already stated it claims

no attorney-client privilege or common legal interest for that period until January 28, 2019.

For these reasons, Plaintiff has met her burden under Fed. R. Civ. P. 37 to show Defendant's response to RFP No. 16 is incomplete for the time period since May 1, 2020. Defendant's objections based on attorney-client privilege and the common interest doctrine are sustained as concerns communications occurring between January 28, 2019 – April 30, 2020, and are overruled for communications occurring since May 1, 2020. Defendant is ordered to produce the latter communications responsive to RFP No. 16 within 14 days from the date of this Discovery Order.

### B. Plaintiff's Amended Motion For Leave to Depose [Dkt. 78]

Plaintiff seeks leave to depose attorney Karla Pierce, Assistant Director of the CAO's Employment and Labor Law Section. According to the City, Ms. Pierce

> is both a key legal advisor to the City on employment matters and a supervisor who manages most of the employment litigation for the City. Assistant Director Pierce provided legal advice and assistance to the Denver County Court from the time Plaintiff first reported her allegation against Retired Senior Judge Andrew Armatas to the City's Office of Human Resources and the Denver Police Department through to the conclusion of the investigation and discipline processes, and has managed the present litigation dispute since its inception.

[Dkt. 81 p.1-2.]

The parties agree this issue is governed by the Eighth Circuit's *Shelton* test, which the Tenth Circuit approved in *Boughton v. Cotter Corp.*, 65 F.3d 823, 829-30 (10th Cir. 1995) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Under that test, depositions of opposing counsel should be limited to

9

where the party seeking the deposition has shown: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Id.* at 829. This Court has the discretion under Fed. R. Civ. P. 26(c) to issue a protective order prohibiting the deposition of an opposing counsel if it finds one or more of the *Shelton* factors are not met. *Id.* at 830.

Relevant here, after the Plaintiff filed charges of discrimination with state and federal agencies, the City hired David Vogel from Employment Matters, LLC, to investigate her allegations. Part of Plaintiff's theory of the case is that Mr. Vogel's investigation—which found no wrongdoing by Judge Armatas—was a sham. According to Plaintiff, Ms. Pierce limited the scope of Mr. Vogel's investigation, and the City viewed the judge as an ally. Plaintiff wants to depose Ms. Pierce to ask her why she limited the scope of the investigation (in at least two respects) and why she provided certain documents to Judge Armatas' attorney, seemingly treating him as an ally while he was under investigation.

Plaintiff further argues the City has waived any claims of attorney-client privilege or work-product protection involving Mr. Vogel's investigation because the City placed the reasonableness of the investigation at issue by asserting the *Faragher/Ellerth* affirmative defense. The City conspicuously did not address this argument in its responsive pleading.

The City asserted *Faragher/Ellerth* for its fifth affirmative defense, claiming it "cannot be held liable for any unlawful act of supervisors because the City exercised reasonable care to prevent and properly correct any discriminatory or retaliatory behavior, and Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by the City or to avoid harm." [Dkt. 30 p.10.] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 745 (1998). "Courts have interpreted an assertion of the *Faragher/Ellerth* affirmative defense as waiving the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response to employee complaints of discrimination because doing so brings the employer's investigations into issue." *E.E.O.C. v. Outback Steakhouse of FL*, Inc., 251 F.R.D. 603, 611 (D. Colo. 2008). This is because the "reasonableness of the employer's investigation – *i.e.* its thoroughness – and the appropriateness of any disciplinary action that the employer took against the alleged harasser in light of that investigation are also matters that the jury must consider in evaluating a *Faragher/Ellerth* affirmative defense." *Culp v. Remington of Montrose*, LLC, No. 18-cv-02213-MSK-GPG, 2020 WL 2316099, at *1 (D. Colo. May 11, 2020). While the Tenth Circuit has not "categorically stated that assertion of a *Faragher/Ellerth* defense operates to waive privileges that attach to an attorney-guided investigation of a sexual harassment complaint[,] the clear weight of District Court authority leans towards such a finding." *Id.* at *2 (citing cases).

11

Here, Ms. Pierce supervised the investigation conducted by Mr. Vogel. [Dkt. 81, p.15 (referring to Ms. Pierce as having supervised the investigation).] And Mr. Vogel's notes reflect "he worked with [Ms. Pierce] to arrive at five primary issues and seven separate categories of allegations." [Dkt. 81, p.6.] This is precisely the type of involvement which can lead to a waiver of the attorney-client privilege or work-product protection in the face of a *Faragher/Ellerth* affirmative defense. *See, e.g., id.* ("The Plaintiffs' entitlement to discovery of [the lawyer's] advice . . . serves to ensure that any influence by her that affected the thoroughness of the investigation is brought to light.").

With that in mind, the Court turns to the *Shelton* factors. First, under the circumstances here, no other means exist to obtain the information sought than to depose Ms. Pierce. While Plaintiff has deposed Mr. Vogel and obtained a copy of his file, his file and deposition testimony do not necessarily reflect Ms. Pierce's influence over the investigation in her supervisory role, or her specific part or influence in arriving at the five primary issues and seven separate categories of allegations involved in the investigation. Further, the City appears to have limited some of the information it has produced concerning Mr. Vogel's investigation based on claims of attorney client privilege or work product, which this Court has now overruled or found waived consistent with this Order.

Second, as discussed above, Ms. Pierce's involvement in supervising the investigation and working with Mr. Vogel to determine the primary issues and

allegations for investigation is relevant to the City's *Faragher/Ellerth* affirmative defense and any privilege or work-product protection has been waived. Third, the Court finds the information is crucial to preparation of the case in light of the City's affirmative defense and Ms. Pierce's role in and over the investigation.[4]

The Court finds the *Shelton* factors are satisfied and Plaintiff may depose Ms. Pierce but only in the following areas: (1) Mr. Vogel's investigation and her role, advice, and actions in supervising, directing, or otherwise participating in the investigation; and (2) her communications with Mr. Miller subject to the Court's above-ruling regarding the discovery dispute. Plaintiff's further request to depose Ms. Pierce over non-privileged communications "with any person who was neither a client of Defendant nor [sic] about anything any such person may have witnessed concerning Plaintiff, Judge Armatas or in any way connected to the termination of Plaintiff's employment and the investigation of her claim that Judge Armatas sexually assaulted her[,]" is overly broad and does not meet the *Shelton* factors.

\*       \*       \*

---

[4] The Court is not persuaded Plaintiff's delay in seeking Ms. Pierce's deposition is indicative of her cruciality to the case. The Court is instead persuaded by the substance of her knowledge in light of the role she played supervising the investigation, determining issues and allegations for investigation, and the City asserting the *Faragher/Ellerth* affirmative defense. In any event, Plaintiff timely sought Ms. Pierce's deposition prior to the expiration of discovery.

IT IS ORDERED:

Defendant shall supplement its response to RFP No. 16 consistent with this Order within 14 days;

Defendant shall make Ms. Pierce available for a deposition consistent with the Order, said deposition to be completed within 30 days; and,

The Dispositive Motion deadline is extended to January 31, 2023, based on the discovery allowed by this Order.

DATED: November 30, 2022

BY THE COURT:

S. Kato Crews
United States Magistrate Judge